UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

NM Holdings Company, LLC, et al.,
f/k/a Venture Holdings Company, LLC, et al.,

                              Debtor.     /

Stuart Gold, Chapter 7 Trustee for
NM Holdings Company, LLC, et al.,
f/k/a Venture Holdings Company, LLC, et al.,

                          Plaintiff,

vs.

Trim X Technologies,

                            Defendant.     /

Case No. 03-48939
Chapter 11
Jointly Administered
Hon. Thomas J. Tucker

Adv. No. 05-4712
Hon. Marci B. McIvor

**OPINION GRANTING JUDGMENT TO PLAINTIFF IN THE AMOUNT
OF $157,350.12**

On March 28, 2003, NM Holdings Company, LLC, f/k/a Venture Holdings Company, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The case subsequently converted to a Chapter 7 case.

On March 23, 2005, Plaintiff, Stuart Gold, the Chapter 7 Trustee for NM Holdings Company, LLC, et al., f/k/a Venture Holdings Company, LLC, et al, filed a Complaint against Defendant, Trim X Technologies. The Complaint alleges that Defendant received preferential payments in the amount of $315,710.38[1] within ninety (90) days prior to the filing of Plaintiff's bankruptcy. A trial was held on December 6, 2006. After both Plaintiff and Defendant had presented their case, Plaintiff made an oral motion for

---

[1]The Final Pretrial Order states as a stipulated fact that the correct dollar amount of the alleged preferential transfers is $320,403.38.

directed verdict. Plaintiff argued that Plaintiff had proved that the payments were preferential transfers pursuant to 11 U.S.C. § 547(b) and that Defendant had failed to prove any of the defenses that would defeat the Trustee's ability to avoid the preferential transfers. For the reasons set forth in this Opinion, Plaintiff's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The parties submitted a Joint Final Pretrial Order pursuant to L.B.R. 7016-1 (E.D.M.). The parties stipulated to the following facts:

(1) On March 28, 2003, Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

(2) On January 17, 2006, (the conversion date), this Court entered its order converting the Debtors' Chapter 11 cases to these proceedings under Chapter 7 of the Bankruptcy Code. Within approximately one week of the conversion date, Stuart Gold was appointed the Chapter 7 Trustee.

(3) The Debtors issued and delivered check number 381750 to the Defendant in the amount of $104,712.04. The Defendant received and deposited the check during the preference period and the check was honored by Debtors' bank during the preference period.

(4) The Debtors issued and delivered check number 383022 to the Defendant in the amount of $37,466.57. The Defendant received and deposited the check during the preference period, and the check was honored by the Debtors' bank during the preference period.

(5) The Debtors issued and delivered check number 383804 to the Defendant

2

in the amount of $87,509.93. The Defendant received and deposited the check during the preference period, and the check was honored by the Debtors' bank during the preference period.

(6) The Debtors issued and delivered check number 385289 to the Defendant in the amount of $18,903.71. The Defendant received and deposited the check during the preference period, and the check was honored by the Debtors' bank during the preference period.

(7) The Debtors issued and delivered check number 387271 to the Defendant in the amount of $71,811.13 (together with the transfers described in the preceding paragraphs 3-7, the "Transfers"). The Defendant received and deposited the check during the preference period, and the check was honored by the Debtors' bank during the preference period.

(8) The Transfers were: (a) made by the Debtors to or for benefit of the Defendant, a creditor of the Debtors at the time the Transfer was made; (b) for or on account of an antecedent debt owed by the Debtors to the Defendant before the Transfers were made.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## ANALYSIS

Pursuant to 11 U.S.C. § 547(b) preferential transfers are voidable by the Trustee or by the debtor-in-possession, of the bankruptcy estate. In order to establish that a preferential transfer exists, a plaintiff has the burden of proof as to the following five (5)

3

facts:

(1) the transfer must be to or for the benefit of the creditor;

(2) on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made (a) on or before ninety (90) days before the date of the filing of the petition; or (b) between ninety (90) days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enabled such creditor to receive more than such creditor would receive if: (a) the case were a case under Chapter 7 of this title; (b) the transfer had not been made; and (c) such creditor received payment of such debt to the extent provided by the provisions of this title.

The parties stipulated that payments were made by Plaintiff to Defendant within ninety (90) days before the filing of the petition, that those payments were on account of invoices owed to Defendant, and that the payments were for the benefit of Defendant. Defendant argued that there were questions of fact as to Plaintiff's solvency on the date of filing, and whether Defendant had received more through the preferential transfers than it would have through the distribution of estate assets by the Chapter 7 Trustee.

11 U.S.C. § 547(f) provides:

> For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

The transferee may rebut the presumption that the debtor is insolvent during the 90 days prior to filing for bankruptcy by introducing evidence that the debtor was not in fact

4

insolvent at the time of the transfer. *In re Roblin Industries, Inc.*, 78 F.3d 30 (2nd Cir. 1996).

At trial, Defendant failed to introduce any evidence that would rebut the presumption that Debtor was insolvent 90 days prior to filing for bankruptcy. The Court finds that Plaintiff has met its burden of proof with regard to the third element necessary for establishing a preferential transfer.

With regard to the issue of whether Defendant received more through the preferential transfers than Defendant could receive from the Chapter 7 bankruptcy estate, the Chapter 7 trustee, Stuart Gold, testified at trial that the total assets available for distribution from the Chapter 7 estate, even if the Trustee was one hundred percent successful in recovering on its preference actions, was $315,000,000 plus any recovery on a malpractice claim filed by the Trustee against Debtors' accountants. However, the Trustee testified that any recovery on the malpractice claim was "speculative". The Trustee also testified that claims filed against the estate totaled $928,000,000 exclusive of administrative claims. The Trustee testified that Chapter 11 administrative claims totaled between $30,000,000 and $32,000,000 and that to date there are Chapter 7 administrative expense claims in the approximate amount of $250,000. Based on these figures, the Trustee concluded that the maximum recovery for unsecured creditors through the Chapter 7 bankruptcy estate is thirty-five (35%) percent.

The preferential payments to Defendant allowed Defendant to recover one hundred (100%) percent of the invoices paid by the preferential transfers. Since under a best case scenario, Defendant would only receive a thirty-five (35%) percent payoff in a Chapter 7 case, the preferential transfers allowed Defendant to receive more than it

5

could receive from the Chapter 7 bankruptcy estate. Therefore, Plaintiff has met its burden of proof on the final element necessary to establish a preferential transfer.

Once a plaintiff establishes a preferential transfer, the burden shifts to the defendant to prove one of the defenses set forth in 11 U.S.C. § 547(c). *Logan v. Basic Distribution Corporation (In re Hawes)*, 957 F.2d 239 (6th Cir. 1992). Defendant raised two defenses: the "ordinary course" defense and the "new value" defense.

The ordinary course defense is codified at 11 U.S.C. § 547(c)(2). That section states that the trustee may not avoid a transfer,

> to the extent that such transfer was -
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> (B) made in the ordinary course of business or financial affairs or the debtor and the transferee; and
> (C) made according to business terms;

Because § 547(c)(2) is written in the conjunctive, Defendant must prove all three elements of sub-section (c).[2]

Both Plaintiff and Defendant are in the automotive supply business. Plaintiff incurred debt to Defendant as a result of parts shipped to Plaintiff by Defendant. There is no question that Plaintiffs' debts to Defendant were incurred in the ordinary course of their businesses. Defendant alleges, however, that Plaintiffs' payments were not preferential because they were made in the ordinary course of business as conducted between Debtor and Defendant, and that the payments were made according to ordinary business terms.

---

[2]Since this case was filed on March 28, 2003, this case is not controlled by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

6

In order to prove that payments were made in the ordinary course of business of the debtor and the transferee (referred to as the subjective prong of the test) the defendant transferee must show that the manner in which payments were made was ordinary as to them. For purposes of proving the subjective prong of the test courts consider several factors including the timing, the amount and manner in which a transaction was paid and the circumstances under which the transaction was made. *In re Fred Hawes,* 957 F.2d 239 (6th Cir. 1992). In order to prove that payments were made according to ordinary business terms, (the "objective prong") defendant must show that the manner in which payments were made was ordinary in relation to standards prevailing in the relevant industry. *In re Russell Cave Co.,* 259 B.R. 879 (Bankr. E.D. Ky. 2001).

At trial, Defendant's president, Hilrie Edwards, testified that the purchase orders entered into between Plaintiff and Defendant controlled the payment terms between the parties and that the terms of payment required payment within 45 days. Defendant's bookkeeper, Melissa Garner, testified that between May, 2002 and January 14, 2003, on average, Plaintiff paid Defendant between 70 and 80 days after Defendant submitted its invoices to Plaintiff. Defendant's testimony was supplemented by Defendant's Exhibits 2 and 3; Exhibit 2 is a spread sheet listing hundreds of invoices, the date on which the invoices were sent, the amount of the check sent by Plaintiff in payment of the invoices and the date on which the checks were sent. Defendant's Exhibit 3 is a graph which represents the number of days between the date on which Defendant submitted an invoice to Plaintiff, and the date in which that invoice was paid.

The parties stipulated that the preferential transfers consist of five (5) checks

7

issued by Plaintiff during the preferential period. At trial, Defendant failed to link those checks to any specific invoices, making it impossible for the Court to determine the number of days between the date on which the invoices paid by the preferential transfers were submitted to Plaintiff, and the date on which those invoices were paid. In other words, even if Defendant had proven that the ordinary course of payment between Defendant and Plaintiff was 70 to 80 days, rather than the 45 days set forth in the purchase orders, Defendant failed to prove that the invoices paid by the preferential payments were submitted 70 to 80 days prior to payment. Defendant's Exhibit 3 shows that many payments were actually made between 80 and 130 days after the invoices were submitted. Again, even if Defendant had proved that the ordinary course of payment between Defendant and Plaintiff was 70 to 80 days, there is no evidence that the invoices paid by the preferential payments were not invoices that were paid <u>more</u> than 70 days after submission of the invoice, since many of the invoices were not paid until between 80 and 130 days after submission.

Furthermore, the Court finds that Defendant failed to establish its burden of proof with regard to what the ordinary course of payment was between Plaintiff and Defendant. Defendant testified that Defendant started producing parts for Plaintiff in 2002 but failed to give a specific date. Defendant's bookkeeper, in discussing Defendant's Exhibit 3 spoke only about the payment period between May, 2002 and January 14, 2003. Defendant failed to meet its burden of proof as to the ordinary course of payment for periods prior to May, 2002. It is impossible for the Court to determine the time frame during which Plaintiff routinely paid Defendant on other terms than the payment terms specified in the purchase orders. Based on the evidence, the

8

Court is unable to determine either what the ordinary course of dealing was between Plaintiff and Defendant, or if the particular payments at issue in this lawsuit were outside the ordinary course.

With regard to the "objective prong" of the § 547(c)(2) test, Defendant failed to meet its burden of proof on the issue of payment standards prevailing in the industry. Defendant's president, Hilrie Edwards, testified that he knew numerous people in the automotive supply business and that he had the general sense that Plaintiff was often late on its payments to its suppliers. However, Mr. Edwards had neither personal knowledge nor documents sufficient to establish the standard of payment in the automotive supply industry, or to establish whether the payments made by Plaintiff to Defendant fell within that standard. Even if the Court were able to conclude that late payment was the norm in the automotive supplier industry, there is simply no evidence to show whether the payments made during the preference period were made within or without the standard of the industry because Defendant failed to link the payments to payment of any specific invoice. Based on the lack of evidence, the Court finds that Defendant has failed to meet its burden of proof with regard to the ordinary course defense.

The other defense argued by Defendant at trial is that Defendant provided new value to Plaintiff during the preferential period and, to the extent that Defendant provided new value, it is entitled to a setoff of any preferential payments.

11 U.S.C. § 547(c)(4) states that the trustee may not avoid a transfer:

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor-

9

>>(A) not secured by an otherwise
unavoidable security interest; and
>>(B) on account of which new value the
debtor did not make an otherwise unavoidable
transfer to or for the benefit of such creditor;

Section 547(c)(4) only applies to subsequent advances. Therefore, a transfer of new value can be used as an offset against preferential payments made before the delivery of new goods, but not against preferential payments made after the delivery of the new value. *Waldschmidt v. Rainer (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 173 (6th Cir. 1983), *cert. denied*, 464 U.S. 935 (1983). The timing of a creditor's extension of new value is therefore crucial in calculating whether a defendant has the ability to offset the value of the new goods shipped against a prior preferential payment. *Information Packaging, Inc. V. Golden Eagle Products (In re Information Packaging, Inc.)* 297 B.R. 521 (Bankr. M.D. Tenn. 2003).

> 'This 'new value' exception to preference recovery is directed at debtors and creditors who had multiple transactions during the preference period.' *Van Dyck/Columbia Printing, v. Katz (In re Van Dyck/Columbia Printing)* 289 B.R. 304, 315 (D.Comm.2003) (quoting *Allied Companies, Inc. v. Broughton Foods Co.*, 155 B.R. 739, 741 (Bankr. S.D. Ind. 1992)). Section 547(c)(4) is properly described as a subsequent advance rule meaning that a preferential transfer may be set off only against new value advances after the preference is received. *In re Van Dyck/Columbia Printing*, 289 B.R. at 315. '[Section] 547(c)(4) contemplates carrying forward the net balance of prior preferences in determining the effect of subsequent value on the total preference claimed.' *In re Van Dyck/Columbia Printing*, 289 B.R. at 315 (quoting *Baumgold Bros. V. O Censor & Co.*, 103 B.R. 436, 440 (Bankr. S.D. N.Y. 1989)). Section 547(c)(4) was not 'designed to limit credit for subsequent advances only to advances that remained unpaid , as such an interpretation would limit the exemption in § 547(c)(4) to one subsequent advance when

10

> Congress clearly contemplated its application to more than
> one exchange.' *Id.* (Citing *In re Paul Sake & Co., Inc.*, 53
> B.R. 630 (Bankr. S.D. N.Y. 1985)).

*Information Packaging, Inc.*, 207 B.R. at 524.

In support of its argument that it extended new value, Defendant's bookkeeper, Melissa Garner, testified that between January 6, 2003 and March 27, 2003, Defendant shipped goods with a total value of $309,326.80 to Plaintiff. While the witness failed to specify each and every item shipped, the witness referred to Exhibit 5 which consists of Defendant's invoices and bills of lading. Documents contained in Exhibit 5 confirm the shipment of goods to Plaintiff during the preference period. The Court reviewed the invoices and bills of lading and determined that the value of goods shipped between January 24, 2003 (the date the first alleged preferential payment was received) and March 28, 2003, the date Plaintiff filed for bankruptcy, is $163,053.26. Defendant's Exhibit 4 confirms that the total payments made by Plaintiff to Defendant during the preference period was $320,403.38 (Joint Final Pre-Trial Order, IV. Stipulated Facts). The attached chart confirms that Defendant made subsequent advances of unsecured credit after preferential payments were made. To the extent that Defendant made subsequent advances, Defendant is allowed an offset against the balance owed to Plaintiff. After the offset for new value advanced to Plaintiff, Plaintiff is entitled to a recovery of $157,350.12.

11

| Payments Received from Plaintiff During Preference Period | | | Value of Good Shipped by Defendant During Preference Period | | |
|---|---|---|---|---|---|
| Amount | Check No. | Date Check Received by Defendant | Amount | Date Shipped | Invoice and Bill of Lading No. |
| $104,712.04 | 381750 | 1/24/03 | $ 16,837.80 | 1/24/03 - 2/2/03 | See Exhibit A |
| $ 37,466.57 | 383022 | 2/3/03 | $ 63,522.34 | 2/3/03 - 2/20/03 | See Exhibit A |
| $ 87,509.93 | 383804 | 2/20/03 | $ 34,733.98 | 2/21/03 - 3/3/03 | See Exhibit A |
| $ 18,903.71 | 385289 | 3/3/03 | $ 47,959.14 | 3/4/03 - 3/28/03 | See Exhibit A |
| $ 71,811.13 | 387271 | 3/28/03 | | | |

| Summary of Outstanding Preference Payments | | | |
|---|---|---|---|
| Date Preference Payment Received by Defendant | Amount of Preference Payment | Value of Goods Shipped After Preference Payment | Balance of Preference Payments |
| 1/24/03 | $104,712.04 | $ 16,837.80 | $ 87,874.24 |
| 2/3/03 | $ 37,466.57<br>87,874.24<br>$125,340.81 | $ 63,522.34 | $ 61,818,47 |
| 2/20/03 | $ 87,509.93<br>61,818.47<br>$149,328.40 | $ 34,733.98 | $114,594.42 |
| 3/3/03 | $ 18,903.71<br>114,594.42<br>$133,498.13 | $ 47,959.14 | $ 85,538.99 |
| 3/28/03 | $ 71,811.13<br>85,538.99<br>$157,350.12 | | $157,350.12 |

## STANDARD FOR DIRECTED VERDICT

At the conclusion of the trial, Plaintiff brought a motion for a directed verdict.

12

Directed verdicts are controlled by Fed. R. Civ. P. 50. Fed. R. Civ. P. 50 states:

> **Judgment as a Matter of Law in Jury Trials**
> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter or law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

A motion for directed verdict is generally made in a jury trial. It is a motion which requests that the court enter a verdict prior to submitting a case to the jury on the grounds that the moving party (usually the plaintiff) has failed to prove its case.

> 'It is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustain his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such a burden.'
> . . . . .
> We are of the opinion that where, as here, the facts give rise to two irreconcilable inferences, either of which is reasonable, the submission of a choice thereof to a jury is to permit the jury to indulge in speculation and conjecture. Defendant's motion for a directed verdict should have been sustained. *Id.* (quoting *Stevens v. Indus. Comm'n*, 145 Ohio St. 198, 61 N.E.2d 198, 200 (1945)).

*Everett v. Verizon Wireless*, 361 F.Supp 698 (N.D. Ohio 2005).

There is no equivalent to Fed. R. Civ. P. 50 in the Federal Rules of Bankruptcy Procedure. Plaintiff's Motion for Directed Verdict was unusual in the context of a bench

13

trial in bankruptcy court. However, given the manner in which this case was tried, the Motion for Directed Verdict made sense. At trial, Plaintiff proved all the elements of a preferential transfer under 11 U.S.C. § 547 and Plaintiff argued that the testimony of Defendant's witness was so inconclusive with regards to any defense under 11 U.S.C. § 547(c), that the Court must direct a verdict in favor of Plaintiff.

The Court agrees that Defendant's witnesses were poorly prepared and that Defendant's bookkeeper failed to support her conclusions about shipments during the preference period with any specific references to the other documents in evidence. However, while the testimony of Defendant's bookkeeper could not in and of itself prove the new value defense, Defendant's Exhibits 4 and 5, both admitted into evidence, contained documentation which proved the timing of the preferential payment, and the timing and value of the shipments sent by Defendant to Plaintiff during the preference period. (See attached Exhibit A.) Defendant produced evidence sustaining its claim that Defendant provided new value to Plaintiff in the amount of $163,053.26 between January 24, 2003 and March 28, 2003. Plaintiff's motion for directed verdict is, therefore, denied in part. Defendant is entitled to an offset in the amount of $163,053.26 against preferential payments in the amount of $320,403.38.

Neither Defendant's witnesses, nor any documents submitted into evidence substantiate Defendant's argument that some additional amount of the preferential transfers can be avoided by subsequent advances of new value. Therefore, Plaintiff is entitled to a judgment in the amount of $157,350.12 – the amount by which the preferential transfers ($320,403.38) exceed the value of the subsequent advances ($163,053.26).

14

## CONCLUSION

Plaintiff proved that it made preferential transfers in the amount of $320,403.38 pursuant to 11 U.S.C. § 547(b). Defendant proved that it repeatedly shipped goods after preferential payments were made, and that the value of those goods was $163,053.26. Pursuant to 11 U.S.C. § 547(c)(4) a Trustee may not avoid transfer which provided new value for the debtor. Therefore, Plaintiff is entitled to a judgment against Defendant in the amount of $157,350.12.

**Signed on January 04, 2007**                                  **/s/ Marci B. McIvor**
                                                                                    **Marci B. McIvor**
                                                                                    **United States Bankruptcy Judge**

| Exhibit A | | | |
|---|---|---|---|
| Date Shipped | Invoice Number | Bill of Lading # | Dollar Amount of Goods Shipped |
| 1/28/03 | 30509 | 10646 | $11,622.56 |
| 1/29/03 | 30516 | 10652 | 2,480.52 |
| 1/30/03 | 30519 | 10655 | 2,734.72 |
| 2/4/03 | 30529 | 10665 | 8,195.96 |
| 2/5/03 | 30532 | 10668 | 7,012.44 |
| 2/10/03 | 30542 | 10679 | 6,836.80 |
| 2/11/03 | 30545 | 10681 | 2,843.20 |
| 2/12/03 | 30549 | 10685 | 5,096.85 |
| 2/13/03 | 30552 | 10688 | 3,418.40 |
| 2/13/03 | 30553 | 10689 | 1,580.83 |
| 2/14/03 | 30559 | 10695 | 5,298.52 |
| 2/17/03 | 30562 | 10699 | 3,985.40 |
| 2/18/03 | 30565 | 10702 | 5,838.40 |
| 2/18/03 | 30566 | 10703 | 2,432.82 |
| 2/19/03 | 30570 | 10707 | 2,905.64 |
| 2/20/03 | 30573 | 10710 | 2,761.84 |
| 2/20/03 | 30574 | 10711 | 2,895.24 |
| 2/20/03 | 30576 | 10713 | 2,420.00 |
| 2/21/03 | 30579 | 10717 | 1,367.36 |
| 2/21/03 | 30582 | 10719 | 2,563.80 |
| 2/24/03 | 30585 | 10722 | 4,614.84 |
| 2/25/03 | 30588 | 10726 | 4,129.20 |
| 2/25/03 | 30589 | 10727 | 3,634.14 |
| 2/26/03 | 30594 | 10731 | 1,940.22 |
| 2/27/03 | 30597 | 10734 | 5,469.44 |
| 2/28/03 | 30601 | 10737 | 3,418.40 |

| Exhibit A |||| 
| Date Shipped | Invoice Number | Bill of Lading # | Dollar Amount of Goods Shipped |
| --- | --- | --- | --- |
| 2/28/03 | 30602 | 10738 | 2,540.88 |
| 3/3/03 | 30606 | 10742 | 4,956.68 |
| 3/3/03 | 30607 | 10743 | 99.02 |
| 3/4/03 | 30609 | 10745 | 5,164.18 |
| 3/4/03 | 30614 | 10750 | 7,349.56 |
| 3/7/03 | 30617 | 10753 | 3,985.40 |
| 3/10/03 | 30621 | 10756 | 2,816.08 |
| 3/11/03 | 30623 | 10758 | 4,327.24 |
| 3/12/03 | 30628 | 10762 | 2,221.96 |
| 3/13/03 | 30631 | 10766 | 4,956.68 |
| 3/14/03 | 30634 | 10679 | 3,931.16 |
| 3/17/03 | 30640 | 10774 | 9,077.68 |
| 3/19/03 | 30642 | 10776 | 4,129.20 |

The Court's Exhibit A is compiled from Defendant's Exhibit 5. The Court included only invoices for which there was a bill of lading confirming delivery, and only for invoices for goods shipped between 1/24/03 and 3/28/03.